FILED

JUN 13 2024

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

Donald Friend
donfriend1234@gmail.com
407-624-5821

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Donald Friend, an individual,

**Plaintiff**

v.

Google LLC, a Delaware limited liability company,

**Defendant**

**COMPLAINT FOR:**

I. **BREACH OF CONTRACT**
II. **VIOLATION OF CAL. BUS. & PROF. CODE § 17200** *et seq.*
III. **FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)(1)(B)**

**JURY TRIAL DEMANDED**

CASE NUMBER:

C 24 03571 SVK

1. Plaintiff Donald Friend (Friend) brings this action against Google LLC (Defendant) to halt the Defendants' complex and misleading system and practices, which perpetuate fraud on Google Maps through Google Product Experts (GPEs) and internal Google employees.

2. Some GPEs actively manage and promote fraudulent business listings in exchange for compensation from businesses and prevent relevant negative information about the listings they represent from reaching Defendant. Defendant ignores this behavior while GPEs leverage their internal Google relationships and abuse the trust and authority given to them by Defendant for their own profit. This activity impacts thousands of local businesses nationwide, causing immense and unmeasurable financial damage.

3. Friend is an investor in a local business and brings this action to stop the Defendants' willful fraudulent conduct and the ongoing harm they are causing to Friend, Consumers, and all local business owners.

## PARTIES

4. Friend is an individual residing in Orange County, Florida, with a mailing address of 4630 S Kirkman Rd, Ste 441, Orlando, Florida, 32811.

5. Google LLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

## JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121, as this is a civil action arising under the federal Lanham Act, as amended, 15 U.S.C. § 1051 et seq. (the "Lanham Act"). The Court has supplemental jurisdiction over all other claims pursuant to 28 U.S.C. § 1367 because all claims herein form part of the same case or controversy under Article III of the United States Constitution.

7. This Court has personal jurisdiction over Defendant Google LLC because Google's principal place of business is in California, where this Court is located. Additionally, Google has consented to the jurisdiction of the federal and state courts in Santa Clara County, California, through its Terms of Service, which include a choice of venue provision, as discussed in more detail below.

41   8. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of
42      the events or omissions giving rise to the claims occurred at Defendants headquarters,
43      which is in this District. Additionally, Plaintiff consented to venue in this District through
44      Google's Terms of Service and the choice of venue provision therein, as discussed in
45      more detail below.
46   9. This action is properly assigned to the San Jose Division of this District under Civil Local
47      Rule 3-2(c) because Defendant Google is headquartered in Santa Clara County, which is
48      served by the San Jose Division.
49
50                    **GOOGLES BUSINESS PROFILE AND GOOGLE MY BUSINESS SERVICES**
51   10. Among its other services, Google offers a search engine, Google Search, and a mapping
52       tool, Google Maps. Both Search and Maps contain "Business Profiles" with details of
53       businesses, service providers, and other places of interest. Business Profiles span an
54       enormous variety of businesses and professionals: restaurants, car mechanics,
55       accountants, plumbers, dentists, hair salons, law firms, government agencies,
56       contractors, retail stores, amusement parks, and many other kinds of goods or service
57       providers.
58   11. With Search and Maps, users can explore and search for businesses in a given area. The
59       resulting Business Profiles display certain information about a business, including its
60       street address, hours, website, phone number, and so on. Business Profiles also display
61       user-submitted reviews of the associated business. It is important to consumers that this
62       information be authentic and accurate. Likewise, because consumers often use Business

63   Profiles and user-submitted reviews to identify businesses and decide which ones to
64   patronize, many business owners—and especially small business owners—find Business
65   Profiles important for attracting and maintaining customers.
66   12. For several years, Defendant has offered businesses a suite of free tools to manage their
67   Business Profiles. These tools were previously known as Google My Business, and some
68   users adopted that term to refer to individual Business Profiles as well (as in, for
69   example, "Our business's phone number and website appear on our GMB."). Google
70   changed the Google My Business name to Google Business Profile in late 2021, though
71   many businesses and consumers continue to refer to Google My Business or "GMB."
72   13. New Business Profiles may be created by businesses themselves, automatically created
73   by Google, or suggested by members of the public. To create a new Business Profile or
74   claim an existing Business Profile, a person must verify basic details about the business
75   and that they are the business's owner or other authorized representative. Following
76   this verification process, the person becomes the profile's "owner" and may edit that
77   Business Profile, grant other users access to do so, and use various other tools and
78   features. For instance, verified business owners and their authorized representatives can
79   update their hours, address, or website, and they can add photos or promotional offers.
80   14. Google offers businesses and their owners a variety of options to complete the
81   verification process. Many businesses verify their addresses by requesting a postcard
82   with a verification code that Google sends to their physical location. Some merchants,
83   including those that operate within a given service area and not from a single physical
84   location at which they can receive a postcard, may be able to verify their listing through

other methods. These include, for example, receiving a phone call or conducting a video call with a Google employee, during which the business can confirm its legitimacy by displaying identifying features like sales inventory, tools of the trade, or a physical storefront.

15. Google offers the ability for GMB profiles to be designated as either physically present and able to receive walk-in customers, a service-area business, or a hybrid. However, a general observation seems to be that businesses with physical locations close to the search results appear more prominently, leading many "service-area" or "hybrid" businesses to claim a physical location.

16. Due to Google's ranking algorithm, appearing with a physical location is preferred to boost the inbound organic leads received. This incentivizes "Service Area" businesses to claim that the profile is a "physical location" that can receive customers when in fact it is a home, an unstaffed office, or simply an address of another (unrelated) business used to trick Google into thinking there is a physical location. This is an aspect that Sterling Sky Inc and other GPEs work hard to extort for their own benefit.

17. Considering the benefit inbound leads provide for local businesses using Google Maps, the financial incentive is high and ripe for fraud. GPEs exploit this incentive to promote their services and push forward noncompliant locations for the benefit of their paid customers.

### DEFENDENTS NONCOMPLIANT, FAKE, FRAUDLENTENT LISTING REPORTING PROCESS

18. To report "fake," noncompliant, or fraudulent listings, users are given few channels to report it through Google Maps or complete a Business Redressal Complaint. Both of these avenues generally do not produce results, responses, or any indication that anything has been reviewed. After a week or so, a user can escalate the problem to the Google My Business Community, which is moderated by GPEs. These GPEs escalate cases to Google as they deem fit. This is an aspect that is critical to the context of this complaint. Consumers are unable to communicate with Google except through a GPE who claims to be a volunteer, doesn't work for Google, and has sole discretionary power as to the outcome of the complaint. Defendant is clearly not doing enough to protect local businesses from fraud, lacks checks and balances, and its employees are corrupt.

19. GPEs (Product Area Experts) are given special privileges and direct access to communicate with Google, with the intent to assist users. However, some GPEs misuse their authority to help clients promote fake, noncompliant, or fraudulent listings in exchange for money. This abuse continues when users report damaging information. As moderators, these GPEs silence dissenting reports, close cases prematurely, and collaborate with other GPEs to manage reports in a way that benefits them. When a GPE encounters a report against another GPE's client, they work together to suppress the report. If damaging information reaches a Google reviewer and results in a profile suspension, GPEs use their connections with internal Google employees to reinstate their clients' profiles. This corruption is widespread and deep-rooted.

20. Defendants do not offer sufficient protection to local businesses from this type of fraud. This damages the Defendant—their products, trustworthiness, credibility, transparency, and reputation—as well as the Plaintiff, thousands of local businesses, and misled consumers. The impact of local search is too important to be obscured behind politics and corporate infrastructure that allows businesses to pay off GPEs to keep their fake locations from being reported properly to Defendant.

21. If blocked by GPEs, the only other reporting channel is legal, providing a high barrier to resolve the issue for many affected business owners.

22. The behavior with supporting evidence has been reported in writing two separate times and repeatedly ignored by Google. Considering Google's immense resources and influence, the only solution is injunctive relief provided by the court.

### STERLING SKY

23. Sterling Sky Inc (Sterling Sky) is a local seo company advertises on their website that they employ four GPEs: Joy Hawkins (Owner), Colon Nielsen (Vice President of Local Search), Yan Gilbert (Sr. SEO Specialist & Analyst), and Elizabeth Rule (Local SEO Analyst & Account Manager).

24. Hawkins is prominently featured by Google on YouTube videos and social media posts and is claimed to be looked upon in the industry as a thought leader for local search. This affords her a leadership position among GPEs and a platform of communication. Through Friends experience, Hawkins and associates at Sterling Sky actively work to protect their clients' fraudulent practices from being reported to Google, reinstate them

150  with Google when they are deactivated, and coach their clients to skirt the Google
151  approval system. This negates the intent and the spirit of what Google Business Pages.
152  Upon personally reporting a fraudulent business listing, Friend was assisted by a GPE
153  and the listing was correctly reviewed and removed by Google. Once the GPE learned
154  the name of the company being reported, the GPE stopped assisting Friend further.

155  25. Hawkings and Nielson, leveraged their Google resources and reinstated this profile
156  quickly. Upon further research it was clear that the business profile was a customer of
157  Sterling Sky. Upon further follow up in the Google My Business Community Forum,
158  Friends posting privileges removed, accounts shutdown, and teamed up on by GPEs for
159  the reporting of their client. I have reported several other locations with similar
160  outcomes.

161  26. The GMB Community Forum is the main non-legal channel for issues to be reported.
162  These and other GPEs collude to protect their clients, shutting down whistleblowers,
163  removing their posting privileges, and closing threads. To be clear, this is the main
164  channel for problem resolution and is monitored by crooked GPEs accepting money for
165  GMB profile protection. Defendant is not doing enough to protect Local Businesses and
166  Consumers from this type of fraud.

167  27. Friend, upon reporting a violation was addressed by Hawkins - who works and lives in a
168  different country than the reported business and through belief, has never been to the
169  business location- rapidly worked to reactivate the profile and defend their fraudulent
170  client location. This pattern occurred several times. Through first-hand experience, upon
171  reporting a violation, Hawkins who works and lives in a different country than the

172      reported business, has never been to the business location, rapidly worked to reactivate
173      the profile and defend their client's fraud.

174    28. Ignoring Google's decisions to suspend the profile, Hawkins and Sterling Sky associates
175      work to reactivate their clients' suspended profile, coaching clients to provide bare
176      minimum evidence and eventually shutting down a reporter's ability to report or
177      comment any further. Hawkins and her team, though they are not employed by Google,
178      leverage their relationships within Google to reactivate their clients. They rely on the
179      thick bureaucracy of Google to protect themselves and their clients.

180    29. Hawkins and Sterling Sky collude with other GPEs to be notified of client mentions,
181      disable accounts of reporting users to silence negative information, and close threads.
182      Effectively, Sterling Sky uses their Google-given privileges and authority to help their
183      customers commit fraud, causing millions in damage to local businesses. They actively
184      claim that all businesses must meet a criterion of rules while themselves allowing their
185      clients to avoid enforcement of Google's rules, policies, and guidelines. It is a massive
186      abuse of authority and creates fraud across the United States, defrauding thousands of
187      businesses.

188    30. Google has been notified in detailed written descriptions on two separate occasions and
189      has ignored the notifications to date. There is no alternative outside of filing this legal
190      complaint.

191    31. An injunction is the only solution to protect businesses from these fraudulent activities,
192      stripping GPEs of authority and stopping the fraudulent activity. As it is impossible to
193      determine the extent to which GPEs are involved, Sterling Sky, Hawkins, and her

194 associates clearly can persuade other GPEs to accomplish their fraudulent goals. There is
195 no choice but for an immediate injunction stopping all activity of Sterling Sky and all
196 GPEs. Google must implement a new system of checks and balances, as the community
197 approach that currently exists is ripe for corruption, fraud, and dishonesty as we have
198 seen here.
199
200 **GOOGLE LLC VS GMBEYE**
201 32. Defendant has itself filed complaints against other companies that have supported the
202 creation of fake and fraudulent listings. Defendant is simultaneously allowing their GPEs
203 to promote fraud while actively suing another company for fraud in a similar manner
204 with fake, bogus, and fraudulent listings. Both are compensated by their customers for
205 supporting fake listings to profit off the backs of Google Users, and local businesses. This
206 activity must stop immediately.
207
208 **DEFENDENTS & GPES VIOLATIONS OF GOOGLE'S TERMS OF SERVICE**
209 33. To create or claim a Business Profile on Google, users must either create or use an
210 existing Google account. By creating an account on Google, each user expressly agrees to
211 Google's Terms of Service ("TOS").
212 34. The TOS provides that "all disputes arising out of or relating to these terms . . . will be
213 resolved exclusively in the federal or state courts of Santa Clara County, California, USA,
214 and [the user] and Google consent to personal jurisdiction in those courts."

35. The TOS incorporates "service-specific additional terms." These "services" include Google Business Profile and Maps, each of which has a separate set of terms of service. As relevant here, the Google Business Profile Additional Terms of Service ("GBP TOS"), Google Business Profile policies and guidelines (the "GBP Policies"), and Google Maps Policies are all incorporated by reference into the TOS. To use Google Business Profile as a merchant, verifying, or editing a Business Profile, a user must reconfirm acceptance of the GBP TOS by proceeding through an enrollment process that states "[b]y clicking proceed you accept Google Business Profile Additional Terms of Service."

36. By exploiting Google's verification process to create and verify a business location the Defendants GPEs violate Googles GBP TOS, the GBP Policies, and the Google Maps Policies.

37. At all relevant times, the GBP TOS has provided that, in order "[t]o qualify for a Business Profile on Google, a business must make in-person contact with customers during its stated hours" and that "lead generation agents or companies" may not create Business Profiles. The GBP Policies further mandate that users "be upfront and honest about the information provided" and "not provide inaccurate or false information about [their] business or the services and products offered." Business Profile users must also "accurately represent their business name . . . as used consistently on [their] storefront, website, stationery, and as known to customers."

38. More generally, the GBP Policies reiterate that "[f]raudulent or illegal activities aren't tolerated on Google[.]" Equivalent terms, with slightly different phrasing, appeared in the versions of these policies that governed Google My Business during all relevant

periods. However, Defendents do not provide a mechanism for problem resolution outside of going through the Google My Business Community Forum, which as mentioned is monitored by GPEs. Telephone, Email, and "X" have been attempted to contact Google with only receiving canned responses or no response.

39. Defendants' business models and practices violate their own established provisions. GPEs create and help verify dummy Business Profiles for businesses that do not actually exist at the physical location as claimed. GPEs thus "provide inaccurate or false information" and are not "upfront and honest about the information provided."

40. GPEs are actively defending and supporting virtual office spaces and unoccupied office spaces as physical business locations. Their clients are coached to use VOIP telephone numbers to support the appearance of a local business area code when in fact the business is not managed or run out of the claimed location. Upon visiting personally visiting several sites, myself and other customer may be greeted with locked doors, empty offices, abandoned parking lots, and po box, and virtual office spaces with no business present making it clear that these profile are set up for the sole purpose of "lead generation."

41. GPEs behavior surrounding the support and assistance with verification of a fake business location and paid support of these Business Profiles constitutes "fraudulent" conduct in violation of the GBP Policies.

42. GPES preach the GBP Policy that a Business Profile reflect a business's real name, yet encourage their customers to "key word stuff" their name, go against brand guidelines, circumvent Google's protections against including keywords in a customer's business

name. Sterling Sky is a top example of this leveraging the resources of four GPEs and the attached relationships with Google and other GPEs to help their clients break the rules, violate TOS, and profiteer off the backs of local businesses.

43. Defendants and their GPEs have also breached provisions in the GBP Policies that regulate the behavior of third parties who, like the Defendants GPEs, administer or purport to administer Business Profiles that they do not own. For example, the GBP Policies prohibit "[d]eceptive behavior," such as claiming a staffed office exists, when it doesn't. Sterling Sky and the GPEs they have relationships with selectively ignore these rules. Generally enforcing them but allowing their clients to skirt the policies.

44. What has been uncovered firsthand is multiple profile locations, stanchly defended by Sterling Sky and Hawkings, yet the profiles only serve as "lead generation agents," who are not permitted to use Google Business Profile, and are therefore in violation of the GBP TOS.

45. Additionally, Defendants and their GPEs violate the Google Maps User Contributed Content Policy (the "Maps UGC Policy"), which is incorporated by reference into Google's TOS. The Maps UGC Policy expressly prohibits posting fake reviews by proscribing "[f]ake engagement," defined as "content that does not represent a genuine experience," and including "[c]ontent that is not based on a real experience and does not accurately represent the location or product in question." Many of the locations that Sterling Sky and Hawkings defend and support do not exist, and do not accurately represent the location.

46. Due to Defendants' actions and lack of a clear resolution channel, Friend is forced to expend substantial time and resources conducting investigations to identify and attempt to report Business Profiles implicated in GPEs scheme, but the GPEs silence any reports that affect their clients.

47. Google is not doing enough to prevent GPEs fraudulent conduct nor does it provide appropriate reporting and follow up to fraudulent business profiles. Google and GPEs profit from such conduct. As a result of Google allowing GPEs fraudulent conduct and not providing a comprehensive reporting system, causing harm to nationwide local businesses and Googles own reputation.

48. On information and belief, not providing an effective way for fraud resolution, by disrupting Business Profiles, Search, and Maps with false and misleading information, Defendants and their GPEs conduct has been a detriment to local businesses nationwide.

**COUNT I: BREACH OF CONTRACT**

49. Plaintiff realleges and incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

50. Defendants entered into binding and enforceable contracts with Google by expressly agreeing to Google's TOS, as set forth above.

51. Google has not fully performed its obligations under the TOS.

52. Defendants breached their contractual obligations under the TOS in a number of ways, including by creating Business Profiles for businesses that do not exist, attaching phone

302 numbers to Business Profiles that are not associated with those businesses, providing
303 false information to Google in connection with Business Profiles, using Business Profiles
304 to generate leads and selling said leads to third parties, failing to comply with Google's
305 rules for working with third parties, and posting or causing to be posted on Google
306 services deliberately fake reviews not based on real experiences.

307 53. As set forth above, as a result of Defendants' breach of the TOS, Defendants have caused
308 Google to be damaged in an amount to be determined at trial, including by forcing
309 Google to incur expenses to investigate and address Defendants' breach.

310

311 **COUNT II: VIOLATION OF CAL. BUS. & PROF. CODE § 17200, et seq.**

312 54. Friend realleges and incorporates by reference all preceding paragraphs as if fully set
313 forth herein.

314 55. Defendants' and their GPEs use of fake Google Maps locations is contrary to the Federal
315 Trade Commission's ("FTC") regulations. Those rules prohibit "any express or implied
316 representation that would be deceptive if made directly by the advertiser." 16 C.F.R. §
317 255.1(a). Defendants violate this provision by misleading consumers with the implication
318 that these fake business profiles exist.

319 56. Violation of FTC regulations is an unlawful business practice under California's Unfair
320 Competition Law ("UCL"), Cal. Civ. Code § 17200.

321 57. Defendants' unlawful business practices have directly resulted in economic harm to
322 Friend, including the costs of Friend's investigation into those practices.

323   58. Absent an injunction prohibiting these unlawful business practices, Defendants are likely
324       to continue ignore the activity of their GPEs and allow them to continue profiting from
325       and supporting fraudulent activity business profiles. Friend, and all local businesses face
326       irreparable harm from the ongoing impact of such behavior of Defendant and their GPE
327       program.

328

329                    **COUNT III: FALSE ADVERTISING (15 U.S.C. § 1125(a)(1)(B))**

330   59. Google realleges and incorporates by reference all preceding paragraphs as if
331       fully set forth herein.
332   60. These false and misleading statements have deceived and/or are likely to deceive a
333       substantive segment of the buying public.
334   61. Such statements undermine Google's measures to ensure the integrity of its platform
335       and are also likely to lead merchants to use Defendants' verification services rather than
336       verify with Google in accordance with its terms.
337   62. Fake locations are misleading, as they purport to represent an actual physical
338       experiences and imply that business profile is a real business.
339   63. Because businesses and users rely on accurate Google Business Profile information, fake
340       business profiles are
341   64. Defendants have made such statements in commercial advertising or promotion in
342       interstate commerce, namely, on Defendants' websites and in Business Profiles.
343   65. Defendants' false and misleading claims are material to consumers because the claims
344       are likely to induce consumers to purchase Defendants' services by causing consumers

to believe that Defendants are have an office in a location close to their search query. Further, Defendants' conduct constitutes false advertisement and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

66. Defendants' deceptive conduct has injured and continues to injure Friend, consumers, local businesses. Unless Defendants are enjoined by this Court pursuant to 15 U.S.C. § 1116, Defendants will continue to mislead the public and cause harm to Friend, consumers, and local businesses.

67. Defendants' and their GPEs false and misleading claims are deliberate, willful, fraudulent, and without extenuating circumstances. Defendants' conduct is thus an "exceptional case" within the meaning of section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). Friend is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action, as well as prejudgment interest.

**PRAYER FOR RELIEF**

68. WHEREFORE, Google respectfully requests the following relief:

   A. That Defendants are adjudged to have breached their established TOS between Defendant and Users;

   B. That Defendants are adjudged to have engaged in unlawful business acts or practices in violation of California's Unfair Competition Law;

C.  That Defendants are adjudged to have violated 15 U.S.C. § 1125(a)(1)(B) by making material, false, and misleading representations of fact in commercial advertisements about the nature and qualities of their products and services;

D.  That Defendants GPE program be permanently enjoined and terminated.

E.  That Defendant provides a transparent reporting mechanism for businesses and users to follow up on reported fake and fraudulent listings and have reported issues handled promptly.

F.  That Defendant establish proper penalties for fraudulent business listings to deter behavior and encourage compliance.

G.  That Friend be awarded damages in an amount sufficient to compensate it for damages caused by Defendants' willful acts.

H.  That Friend be awarded pre-judgement and post-judgment interest; and

I.  That Friend be granted such further relief as the Court may deem just and equitable.

**JURY TRIAL DEMANDED**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Google respectfully demands a jury trial of all issues so triable.

Dated: June 11, 2024

Respectfully submitted,

By: _____

Donald Friend

Pro Se

donfriend1234@gmail.com

407-624-5821