UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD FRIEND,<br><br>   Plaintiff,<br><br> v.<br><br>GOOGLE LLC,<br><br>   Defendant. | Case No. 24-cv-03571-SVK<br><br>**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND**<br><br>Re: Dkt. No. 31 |

  Self-represented Plaintiff Donald Friend entered into an arrangement with non-party Dumpsters Direct LLC ("DD"), a business in which he also invests, under which DD would pay him for assisting it in acquiring new customers. He accuses Defendant Google LLC ("Google") of stifling that arrangement by permitting DD's competitors to include false information about themselves on their Google profiles, thereby leading potential new customers to those competitors and away from DD and accordingly reducing Plaintiff's income. Google moves to dismiss, arguing, *inter alia*, that Plaintiff lacks standing. *See* Dkts. 31 (the "Motion"), 32 (the "Opposition"), 35. Because Plaintiff's alleged injury derives from harm suffered by DD and because Plaintiff does not sufficiently allege that Google caused any diversion of customers away from DD, the Court agrees with Google and **GRANTS** the Motion **WITHOUT LEAVE TO AMEND**.[1]

///

///

---

[1] Plaintiff and Google have consented to the jurisdiction of a magistrate judge, and the Court has determined that the Motion is suitable for resolution without oral argument. *See* Dkts. 6, 9; Civil Local Rule 7-1(b).

I.  BACKGROUND

The following discussion of background facts is based on the allegations contained in the third amended complaint (the "TAC" at Dkt. 24-1), the truth of which the Court accepts for purposes of resolving the Motion.  *See Boquist v. Courtney*, 32 F.4th 764, 772 (9th Cir. 2022); *Queen v. Mooney*, No. 24-cv-02161-SVK, 2024 WL 3363572, at *1 n.2 (N.D. Cal. July 9, 2024).  Google offers various services including an internet search engine ("Search") and a "mapping tool" ("Maps").  *See* TAC ¶ 19.  "Both Search and Maps contain 'Business Profiles' with details of businesses, service providers, and other places of interest."  *See id.*  When users enter queries to find a business on Search and Maps, Google presents them with these Business Profiles that "display certain information about a business, including its street address, hours, website, phone number . . . [and] user-submitted reviews."  *See id.* ¶ 20.  Businesses can create a Business Profile or "claim" an existing Business Profile upon completion of a verification process, after which they may edit the Business Profile.  *See id.* ¶ 22.

The information contained in a Business Profile affects its placement in a user's query results.  For example, "businesses with physical locations" that are "able to receive walk-in customers" and that are "close to the search query have results appear more prominently."  *See id.* ¶ 24.  This "ranking algorithm . . . incentivizes . . . businesses to claim that the[ir] profile[s correspond to] 'physical location[s]' that can receive customers" because an improved placement on a Maps or Search query result can "boost the [business's] inbound organic leads."  *See id.* ¶ 25.  Unsurprisingly, therefore, some businesses will include false information in their Business Profiles to improve their placement in query results in an attempt to obtain new customers.  *See id.* ¶¶ 26-27.  Google does maintain a process for reporting Business Profiles that contain false information, but the individuals who implement that process often partner with the subject businesses and ignore any such reporting in exchange for compensation.  *See id.* ¶¶ 1, 4, 28-30.

Non-party DD created a Business Profile in 2021.  *See id.* ¶ 70.  Because Google permits "fraudulent business listings" to appear in Search and Maps queries, it "ha[s] caused a significant redirection of potential new customers from [DD] to competitors with falsified, fake, or non-compliant profiles."  *See id.* ¶ 12(A).  Plaintiff, an investor in DD who receives compensation

from the company for each new customer he helps it acquire, unsuccessfully reported multiple fraudulent Business Profiles that appear to correspond to DD's competitors. *See id.* ¶¶ 5, 12(A), 67(M); *id.*, Ex. D-A. He subsequently commenced this action to recover from Google for the income he lost as a result of its fraudulent business listings. *See id.* ¶¶ 5, 12, 18.

## II. LEGAL STANDARD

Google moves to dismiss under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**Rule 12(b)(1).** Under Rule 12(b)(1), a court must dismiss a complaint if it lacks subject-matter jurisdiction over the claims asserted. A defendant can challenge a court's subject-matter jurisdiction by mounting either: (1) a facial attack based solely on the allegations of the complaint; or (2) a factual attack based on evidence outside the pleadings. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Whether a plaintiff has Article III standing to proceed in federal court implicates Rule 12(b)(1). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

**Rule 12(b)(6).** Under Rule 12(b)(6), a court must dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This facial-plausibility standard requires a plaintiff to allege facts resulting in "more than a sheer possibility that a defendant has acted unlawfully." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters [subject to] judicial notice." *See UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018) (citation omitted). A court must also presume the truth of a plaintiff's allegations and draw all reasonable inferences in their favor. *See Boquist*, 32 F.4th at 773. However, a court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted).

If a court grants a motion to dismiss, it may exercise discretion to grant or deny leave to

amend the complaint, and it "acts within its discretion to deny leave to amend when amendment would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad faith." *Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.*, 817 F. App'x 380, 383 (9th Cir. 2020) (citation omitted).

## III.   DISCUSSION

Plaintiff brings six claims in connection with Google's allegedly fraudulent business listings. *See* TAC ¶¶ 69-114. Google argues, *inter alia*, that the Court should dismiss all of these claims because Plaintiff lacks standing. "Standing is a necessary element of federal-court jurisdiction." *City of S. Lake Tahoe v. Cal. Tahoe Reg'l Plan. Agency*, 625 F.2d 231, 233 (9th Cir. 1980) (citation omitted). It "includes two components: Article III constitutional standing and prudential standing." *See Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 932 (9th Cir. 2011) (citation omitted). "A litigant must satisfy both to seek redress in federal court." *United States v. Lazarenko*, 476 F.3d 642, 649 (9th Cir. 2007) (citation omitted). Based on the allegations in the TAC, Plaintiff satisfies neither.[2]

### A.   Plaintiff Lacks Prudential Standing Because His Injury Derives From DD's Injury

"[P]rudential limitations" on a federal court's exercise of jurisdiction "are rules of judicial self-governance." *See Sweet v. Cardona*, 121 F.4th 32, 41 (9th Cir. 2024) (citation omitted). As relevant here, those limitations include the rule that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *See Meland v. Weber*, 2 F.4th 838, 847 (9th Cir. 2021) (citation omitted). Seizing on this prohibition against predicating a claim on the rights of third parties, Google argues that Plaintiff lacks standing because any harm he allegedly suffered flows from harm that Google allegedly inflicted directly on DD, a limited liability company ("LLC") in which Plaintiff invests.[3] *See*

---

[2] Because the Court agrees with Google that Plaintiff lacks standing to pursue his claims, it need not address Google's remaining arguments.

[3] Google frames this argument in terms of Article III standing. However, as explained above, the issue actually concerns prudential standing. The Court, therefore, evaluates the argument under Rule 12(b)(6) and not under Rule 12(b)(1), the latter of which governs attempts to dismiss claims

4

1  Motion at 7-9.  Plaintiff identifies two harms that he allegedly suffered because of Google's
2  fraudulent business listings:  (1) harm suffered by virtue of his role as an investor in DD; and (2)
3  harm suffered by reduced compensation to him as a result of lower customer acquisition by DD.
4  *See* TAC ¶¶ 5, 12.

5  **As for harm (1)**, "[i]njury to [a] corporation is not cognizable as injury to [its]
6  shareholders, for purposes of the standing requirements." *RK Ventures, Inc. v. City of Seattle*, 307
7  F.3d 1045, 1057 (9th Cir. 2002) (citation omitted).  The same principle applies to members of
8  LLCs.  *See Woods View II, LLC v. Kitsap Cnty.*, 484 F. App'x 160, 161 (9th Cir. 2012).  Thus,
9  Plaintiff lacks standing to the extent he suffered an injury solely because of his status as an
10  investor in DD.

11  **As for harm (2)**, an investor "does have standing . . . when he or she has been injured
12  directly and independently from the [business]." *See RK*, 307 F.3d at 1057 (quotation marks and
13  citation omitted).  "To determine whether a plaintiff's claim is direct or derivative, [the Court
14  must] apply the law of the state of [organization] . . . ." *Meland*, 2 F.4th at 848 (citations omitted).
15  DD is "a Delaware-formed business," and so the Court must look to Delaware law.  *See* TAC ¶¶ 5,
16  12.  "Under Delaware law, whether an action is direct or derivative depends on 'whether the
17  stockholder has demonstrated that he or she has suffered an injury that is not dependent on an
18  injury to the corporation.'" *Meland*, 2 F.4th at 848 (citing *Tooley v. Donaldson, Lufkin &*
19  *Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004)); *see also Brookfield Asset Mgmt., Inc. v. Rosson*,
20  261 A.3d 1251, 1263 (Del. 2021) ("[P]art of the inquiry should be whether the stockholder has
21  demonstrated that he or she has suffered an injury that is not dependent on an injury to the
22  corporation . . . ." (citation omitted)).[4]

---

for lack of Article III standing.  *See Arakaki v. Lingle*, 477 F.3d 1048, 1056 (9th Cir. 2007) (implying that Rule 12(b)(6) governs dismissal for lack of prudential standing); *Saucedo v. Goode*, No. 21-cv-08314-JST, 2022 WL 20016823, at *2 (N.D. Cal. Aug. 15, 2022) ("California district courts resolve issues of prudential standing pursuant to Rule 12(b)(6)." (citations omitted)).

[4] Delaware courts apply the *Tooley* test to disputes involving LLCs.  *See, e.g.*, *Clifford Paper, Inc. v. WPP Invs., LLC*, No. 2020-0448-JRS, 2021 WL 2211694, at *6-7 (Del. Ch. June 1, 2021); *Stone & Paper Invs., LLC v. Blanch*, No. 2018-0394-TMR, 2019 WL 2374005, at *4 & nn.38-39

1       Plaintiff argues that the income he receives from assisting DD in acquiring new customers "is independent of" DD's economic performance. *See* Opposition at 9-10. Consequently, according to Plaintiff, the loss of this income occurs "irrespective of [DD's] overall financial health," which he distinguishes from instances where a plaintiff's "claims were derivative of the companies' losses." *See id.* That distinction may accurately parse among derivative claims and direct claims in the abstract, but, on the facts of this case, it is a distinction without a difference. In the TAC, Plaintiff frames his reduced compensation as flowing <u>from DD's</u> inability to attract new customers, a result that Google allegedly caused with its fraudulent business listings. *See, e.g.*, TAC ¶ 12(B) ("The redirection of customers due to fraudulent business listings results in a significant reduction in new customer revenue to [DD], significantly reducing Plaintiff's compensation which is tied to new customer acquisition."). As demonstrated by Plaintiff's allegations, his injury occurs <u>as a result</u> of the injury to DD, and therefore necessarily depends on the commission of a prior injury to DD. In other words, Plaintiff is harmed by Google in the second instance only because DD is harmed by Google in the first. Because Plaintiff's injury depends on the commission of an injury to DD, Plaintiff's claims are derivative under Delaware law. He therefore lacks prudential standing. *See Shell Petroleum, N.V. v. Graves*, 709 F.2d 593, 595 (9th Cir. 1983) ("To have standing to maintain an action, a shareholder must assert more than personal economic injury <u>resulting from</u> a wrong to the corporation." (emphasis added) (citation omitted)); *see, e.g.*, *Gregory v. Fresno Cnty.*, No. 18-cv-00524-LJO, 2019 WL 2420548, at *25 (E.D. Cal. June 10, 2019) (no standing for plaintiffs who "are in the position of investors or employees who depend on the success of the corporation and [] have no direct injury" stemming from the defendants' conduct), *report and recommendation adopted*, 2019 WL 7601832 (E.D. Cal. Aug. 8, 2019); *cf. Cycle City, Ltd. v. Usher*, No. 20-cv-00135-WRP, 2020 WL 9762912, at *7 (D. Haw. Sept. 22, 2020) (guarantors lacked standing to sue for injuries stemming from borrower's default because harm to guarantors "would not occur but for the harm allegedly caused to" borrower).

---

(Del. Ch. May 31, 2019).

6

### B. Plaintiff Lacks Article III Standing Because He Does Not Sufficiently Allege That Google Caused His Harm

Article III standing "consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). Google argues that Plaintiff fails to satisfy the "fairly traceable" requirement because his "allegations of injury are [] too speculative and conclusory," as Plaintiff merely assumes that the allegedly fraudulent business listings caused DD to lose potential customers and does not offer specific factual allegations demonstrating such a causal relationship. *See* Motion at 9. Plaintiff counters that he has sufficiently alleged a "plausible link" between the fraudulent business listings and the redirection of potential customers away from DD to its competitors. *See* Opposition at 10, 12. In support, he points to his allegations that explain how fraudulent business listings: (1) "enabled competitors to falsely advertise themselves, diverting potential customers who would otherwise have used" DD; and (2) "dilute[d] the market away from" DD. *See id*; *see also id.* at 6-7 (describing general allegation that fraudulent business listings harm businesses like DD and "diminish the[ir] competitiveness" and Plaintiff's efforts to report fraudulent listings).

The Court agrees with Google that Plaintiff has not sufficiently alleged that the fraudulent business listings caused his injury. "The line of causation between the defendant's action and the plaintiff's harm must be more than attenuated." *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013) (citation omitted). Plaintiff does not satisfy that standard, as he simply assumes that fraudulent business listings enticed potential customers away from DD. While his allegations support the <u>possibility</u> of such customer diversion, he offers no facts to push that possibility beyond the realm of <u>speculation</u>. He does not, for example, describe any instance in which he failed to recruit a potential customer for DD because a fraudulent listing tempted the customer to instead work with a competitor. To be sure, Plaintiff does allege that false information in a business profile can improve the prominence of that business's listing when a user enters a query in Search or Maps. But he fails to tie that fraudulently obtained prominence with any loss of potential business to DD, beyond simply assuming that one causes the other. In

7

the absence of specific factual allegations supporting that conclusion, the chain of causation remains impermissibly conjectural. *See Wash. v. U.S. FDA*, 108 F.4th 1163, 1175 (9th Cir. 2024) ("[P]laintiffs attempting to show causation generally cannot rely on speculation about the unfettered choices made by independent actors not before the courts." (quotation marks and citation omitted)); *Bellon*, 732 F.3d at 1141-42 ("A causal chain does not fail simply because it has several links, provided those links are not hypothetical or tenuous and remain plausible." (quotation marks and citation omitted)).

### C. Granting Plaintiff Leave To Amend Would Be Futile

As discussed above, Plaintiff lacks standing because, based on the TAC: (1) Plaintiff's harm derives from DD's harm; and (2) Plaintiff does not allege that Google caused him harm. While Plaintiff could provide more allegations in an amended pleading to plausibly tie his injury to Google's fraudulent business listings, no allegations could change the conclusion that the injury is impermissibly derivative. The fundamental nature of Plaintiff's claim is that he loses money whenever DD loses out on a potential customer. That is a necessary allegation in any claim that he would bring against Google for the conduct in question, and yet that precise allegation automatically deprives him of standing because it demonstrates that his loss flows from harm to DD. Plaintiff's conclusory allegation that the "fraudulent activities" in question "have directly impaired [his] ability to acquire new customers and earn income" does not change this result. *See* TAC ¶ 13(A). Even if the Court accepted that conclusory allegation, the fact would remain that Plaintiff suffers a loss only <u>after</u> DD experiences a harm. The framework of Plaintiff's arrangement with DD mandates that conclusion under any set of allegations. There is simply no way for Plaintiff to plead around suffering a loss that is derivative. Accordingly, it would be futile to permit him to amend his claims further. *See, e.g.*, *Squeo v. Campbell Soup Co.*, No. 24-cv-02235-SVK, 2024 WL 4557680, at *8 (N.D. Cal. Oct. 22, 2024) (no leave to amend where plaintiffs could not cure deficiency "without fundamentally changing their allegations").

///

///

///

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion **WITHOUT LEAVE TO AMEND**.

**SO ORDERED.**

Dated: January 7, 2025

SUSAN VAN KEULEN
United States Magistrate Judge