**January 26, 2025**

**Donald Friend**

**Donfriend214@gmail.com**

**407-624-5821**

**Pro Se Plaintiff**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

**Donald Friend, Plaintiff** **CASE NO. 5:24-cv-03571-SVK**

v.

**Google LLC, Defendant**

Case No: 5:24-cv-03571-SVK

**PLAINTIFF'S RULE 59(e) MOTION TO ALTER OR AMEND JUDGMENT**

## TABLE OF CONTENTS

**I. INTRODUCTION**……………………………………………………………1

**II. LEGAL STANDARD** ……………………………………………………………1

**III. ARGUMENT**

A. The Early Stage of Litigation and High Stakes Warrant Reconsideration…………..2

B. The Court Committed Clear Error in Characterizing Plaintiff's Status and Rights, Misapplying Delaware Law on Direct Claims…………………3

1. Plaintiff's Claim is Based on a Direct Contractual Right, Not a Derivative Ownership Interest……………………………………………………3

2. Delaware Law Recognizes Contract-Based Claims as Inherently Direct…………………………………………………………4

3. The Court Erroneously Applied a Temporal Test Rejected by Delaware Courts…………………………………………………………4

4. Ninth Circuit Precedent Confirms that Contract Rights Create Direct Standing……5

C. The Court's Standing Analysis is Fatally Undermined by Google's Contradictory Allegations in *GMBEye*, Creating an Unjustifiable Inconsistency……………………………………………………….5

1. Google's *GMBEye* Allegations Mirror Plaintiff's Causation Theory and Demonstrate its Plausibility…………………………...……………..6

2. The Court Imposed an Unreasonably High Pleading Standard that is Contradicted by Google's Own Conduct……………………………8

3. Google's Allegations in *GMBEye* Constitute Binding Judicial Admissions……………………………………………………………...8

D. The Court Committed Clear Error by Denying Leave to Amend Based on an Erroneous Standing Analysis…………………………………...9

1. Plaintiff's Claim is Direct, Not Derivative, and Amendment is Therefore Not Futile………………………………………………………..…9

2. *GMBEye* Demonstrates How Amendment Can Cure Causation Deficiencies……………………………………………………………..9

**IV. CONCLUSION**…………………………………………………………………..12

# TABLE OF AUTHORITIES

**Cases**


- *Ashcroft v. Iqbal*,

  556 U.S. 662 (2009) ……………………………………………………8

- *Bell Atl. Corp. v. Twombly*,

  550 U.S. 544 (2007) ……………………………………………………8

- *El Paso Pipeline GP Co. v. Brinckerhoff*,

  152 A.3d 1248 (Del. 2016)…………………………………………………5, 10

- *McDowell v. Calderon*,

  197 F.3d 1253 (9th Cir. 1999)……………………………………………2

- *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*,

  118 A.3d 175 (Del. 2015) ………………………………………………..4, 10

- *Pareto v. F.D.I.C.*,

  139 F.3d 696, 699 (9th Cir. 1998)………………………………………..5

- *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,

  442 F.3d 741 (9th Cir. 2006) ……………………………………………2, 5, 9

- *Russell v. Rolfs*,

  893 F.2d 1033 (9th Cir. 1990) ……………………………………………...2

- *Smith v. Clark Cnty. Sch. Dist.*,

727 F.3d 950 (9th Cir. 2013) ……………………………………………….2

**Statutes**


- Fed. R. Civ. P. 59(e) ……………………………………………………...1, 2, 6, 9, 13


**Other Authorities**


- *Google LLC v. Hu* ("*GMBEye*"),

  No. 3:23-cv-02964 (N.D. Cal.)…………………………… 1, 5, 6, 7, 8, 9, 10, 11, 12, 13

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 59(e), Plaintiff Donald Friend respectfully moves this Court to alter or amend its January 7, 2025 Judgment dismissing this action (Dkt. 39) ("Order"). This motion is timely filed within 28 days of the entry of judgment. Alteration or amendment is warranted because the Court committed clear error in: (1) mischaracterizing Plaintiff's contractual relationship with Dumpsters Direct LLC ("DD") and consequently applying a derivative injury analysis, when Plaintiff's status is that of a creditor; (2) imposing an unduly high pre-discovery pleading standard for causation that is contradicted by Defendant Google LLC's ("Defendant") own allegations in *Google LLC v. Hu* ("*GMBEye*"), No. 3:23-cv-02964 (N.D. Cal.) (Ex. A); and (3) denying leave to amend based on an erroneous standing analysis.

These errors are particularly striking because Defendant's own allegations in *GMBEye*—a case involving the same type of fraudulent conduct at issue here—directly contradict the Court's causation analysis. In *GMBEye*, Defendant alleges the exact causal chain this Court deemed "too speculative"—that fraudulent business listings divert customers and cause direct economic harm. (Ex. A, *GMBEye* Compl. ¶¶ 49-51). This Court's analysis creates an untenable contradiction where identical causation theories are deemed implausible for Plaintiff but sufficient for Defendant when it is the Plaintiff. Defendant cannot credibly argue this causation is implausible while simultaneously pursuing federal claims based on identical conduct and injury mechanisms.

## II. LEGAL STANDARD

A motion to alter or amend judgment under Rule 59(e) may be granted if: (1) the district court is presented with newly discovered evidence; (2) the district court committed clear error or

made an initial decision that was manifestly unjust; or (3) there is an intervening change in controlling law. *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (en banc). Clear error exists when "the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013).

Courts must consider judicial admissions and positions taken by parties in other federal proceedings when evaluating Rule 59(e) motions. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Dismissals that create inconsistencies with a party's positions in other litigation warrant Rule 59(e) relief. *See Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990).

## III. ARGUMENT

### A. The Early Stage of Litigation and High Stakes Warrant Reconsideration

Courts are particularly receptive to Rule 59(e) motions when dismissal occurs at the pleading stage before discovery. See Lacey v. Maricopa County, 693 F.3d 896, 926 (9th Cir. 2012) (reversing dismissal with prejudice at pleading stage). This is especially true in cases involving novel standing issues. See In re Facebook, Inc., IPO Sec. & Derivative Litig., 797 F.3d 148, 156-58 (2d Cir. 2015) (reversing standing-based dismissal where plaintiffs could amplify allegations through amendment).

The stakes here are significant. Dismissal without leave to amend effectively immunizes Defendant from accountability for fraudulent listings that harm contractors like Plaintiff. Multiple courts have granted Rule 59(e) motions in similar circumstances where dismissal

would create concerning precedent. See, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 (9th Cir. 2003) (reversing denial of Rule 59(e) motion given "the importance of the issues at stake

The precedential impact of dismissal is particularly concerning. It would allow platforms to maintain contradictory positions - arguing identical causation theories are implausible when defending against claims but sufficient when pursuing their own litigation. See United States v. NH, Inc., 124 F.3d 1198, 1203 (9th Cir. 1997) (reversing dismissal that created 'perverse incentives' for inconsistent litigation positions). This undermines judicial integrity and fairness. See New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001).

**B. The Court Committed Clear Error in Characterizing Plaintiff's Status and Rights, Misapplying Delaware Law on Direct Claims.**

The Court's dismissal fundamentally mischaracterizes Plaintiff's relationship with DD. While acknowledging the Customer Acquisition Agreement (TAC Ex. D-A), the Court erroneously analyzed Plaintiff's claims through the lens of a shareholder's derivative rights, rather than recognizing his status as an independent contractor with a direct contractual right to payment, or a creditor with a direct financial interest. (Order at 5-6). This framing is contradicted by the allegations in the TAC, the plain language of the Customer Acquisition Agreement (Ex. D-A), and Delaware law governing direct claims.

1. **Plaintiff's Claim is Based on a Direct Contractual Right and Status as a Creditor, Not a Derivative Ownership Interest.**

The TAC plainly states that Plaintiff's standing arises from his compensation agreement tied *specifically* to new customer acquisition, *not* any ownership interest in

DD. (TAC ¶¶ 5, 17, 67(M), Ex. D-A). While the term "investor" was used in the TAC, it refers to Plaintiff's role as a *creditor* of DD—one who provided start-up capital in exchange for a fixed return. His "investment" was akin to a loan, not a purchase of equity. This is a crucial distinction. Plaintiff's compensation is tied to securing new customers, not ownership.

The Customer Acquisition Agreement (Ex. D-A) is the controlling document. It clearly establishes an independent contractor relationship, obligating DD to pay Plaintiff $200 per customer acquired, plus trailing commissions. These payments are *not* dependent on DD's overall profitability or financial health. They are a direct contractual obligation triggered solely by Plaintiff's performance in acquiring new customers.

2. **Delaware Law Recognizes Contract-Based Claims as Inherently Direct.**

Delaware law, which governs the analysis of DD as a Delaware LLC, explicitly recognizes that contract-based claims are inherently direct and do not require derivative analysis. In *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175, 179-80 (Del. 2015), the Delaware Supreme Court held that "Delaware courts have long recognized that a plaintiff may properly bring a direct claim if the Plaintiff has a contract right that exists independently of any right of the corporation." This principle applies squarely to Plaintiff's situation. His right to payment under the Customer Acquisition Agreement is independent of any right held by DD. It is not contingent on DD's financial success as a whole, but solely on Plaintiff's performance in acquiring new customers for which he is paid.

3. **The Court Erroneously Applied a Temporal Test Rejected by Delaware Courts.**

The Court's analysis incorrectly suggests that because Plaintiff's injury might occur *after* DD experiences a loss of customers, his claim is necessarily derivative. (Order at 8). This introduces a temporal element that is irrelevant under Delaware law. The Delaware Supreme Court has explicitly rejected such a timing-based test, emphasizing that the key question is whether the plaintiff "can prevail without showing an injury to the corporation." *El Paso Pipeline GP Co. v. Brinckerhoff*, 152 A.3d 1248, 1259 (Del. 2016). Plaintiff can. His claim is based on a breach of his *contract*, not on a diminution of DD's value. The fact that the breach may have been *caused* by harm to DD is irrelevant to the *nature* of Plaintiff's claim as a direct, contract-based injury.

4. **Ninth Circuit Precedent Confirms that Contract Rights Create Direct Standing.**

The Ninth Circuit, like Delaware courts, recognizes that a party to a contract has standing to sue for its breach, even if a company with which the plaintiff has a relationship is also harmed. In *Shell Petroleum, N.V. v. Graves*, 709 F.2d 593, 595 (9th Cir. 1983), the Ninth Circuit explained that while a shareholder cannot sue for “personal economic injury resulting from a wrong to the corporation,” a plaintiff may maintain a direct action where their claimed injury does not “derive[] from harm to” another entity. Here, Plaintiff’s compensation is derived from his contractual agreement, not the general well-being of DD. In *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998), the Ninth Circuit held that a plaintiff had standing to sue for breach of contract because he alleged “an injury … distinct from any the corporation itself may have suffered.” Similarly, Plaintiff’s injury stemming from Defendant’s alleged actions is distinct from any injury to DD, as Plaintiff is compensated directly for securing new customers. This compensation

is independent of DD’s overall financial health and is based on Plaintiff's direct contractual rights.

**C. The Court's Standing Analysis is Fatally Undermined by Defendant's Contradictory Allegations in *GMBEye*, Creating an Unjustifiable Inconsistency.**

The Court's conclusion that Plaintiff lacks standing because the causal chain between Defendant's actions and his injury is "too speculative" (Order at 7) is fundamentally undermined by Defendant's own allegations in a nearly identical case, *GMBEye* (Ex. A). In *GMBEye*, Defendant asserts a virtually identical theory of causation, arguing that fraudulent business listings divert customers and cause direct economic harm through lost business and reputational damage. (Ex. A, *GMBEye* Compl. ¶¶ 49-51, 67-69). This Court's rejection of the same causal logic in this case creates an irreconcilable inconsistency that warrants reconsideration under Rule 59(e). Defendant's allegations in *GMBEye* are judicial admissions that are binding on the company and must be considered by this Court. *See Reyn's Pasta Bella, LLC*, 442 F.3d at 746 n.6.

1. **Defendant's *GMBEye* Allegations Mirror Plaintiff's Causation Theory and Demonstrate its Plausibility.**

In *GMBEye*, Defendant alleges the following causal chain:

a. **Fraudulent Listings Divert Customers:** "Users find these [fraudulent] Business Profiles and their websites, and—likely relying on fraudulent reviews—call the VoIP phone numbers or submit online inquiries," leading them to be "connected to

. . . a different repair service" than the one they intended to contact. (Ex. A, *GMBEye* Compl. ¶¶ 49, 51).

b. **Economic Harm Results:** "As a result [of diverted customers], they blame Google for allowing Defendants' fraudulent conduct, causing harm to Google and its business." (Ex. A, *GMBEye* Compl. ¶ 68).

c. **Market Dynamics:** "Consumers often use Business Profiles and user-submitted reviews to identify businesses and decide which ones to patronize." (Ex. A, *GMBEye* Compl. ¶ 14).

These allegations are *identical* to Plaintiff's theory of causation. Both cases involve: (1) fraudulent business listings that mislead consumers; (2) the diversion of customers away from legitimate businesses; and (3) resulting economic harm.

The following comparison demonstrates the direct parallel between Plaintiff's allegations, the Court's findings, and Defendant's own allegations in GMBEye:

1. Regarding Customer Diversion:

   a. Plaintiff alleges: "[F]raudulent business listings... enabled competitors to falsely advertise themselves, diverting potential customers who would otherwise have used Dumpsters Direct." (TAC ¶ 12(A))

   b. Court found: "Plaintiff simply assumes that fraudulent business listings enticed potential customers away." (Order at 7)

c. Yet Defendant alleges: "Users find these [fraudulent] Business Profiles... and... call the VoIP phone numbers or submit online inquiries," leading them to be "connected to... a different repair service." (GMBEye Compl. ¶¶ 49, 51)

2. Regarding Market Impact:

a. Plaintiff alleges: "[F]raudulent listings divert customers and dilute the market away from Dumpsters Direct, impacting his income." (Opp. at 10)

b. Court found: This merely "assum[es] that one causes the other." (Order at 7)

c. Yet Defendant alleges: "[Consumers are] lured in by [fake listings]" and "redirected" to other businesses. (GMBEye Compl. ¶¶ 49-50)

3. Regarding Specific Instances:

a. Plaintiff alleges: Loss of income "tied to the diminished customer flow to Dumpsters Direct due to fraudulent GBP practices." (Opp. at 6)

b. Court found: "Plaintiff does not describe any instance in which he failed to recruit a potential customer." (Order at 7)

c. Yet Defendant provides only hypotheticals: "Imagine a resident of Los Angeles who arrives home to find that her garage door will not open. She searches for a nearby garage repair service on Google. She finds [a] fake listing..." (GMBEye Compl. ¶ 51)

This comparison demonstrates the fundamental inconsistency in the Court's analysis. The *exact same* inferences about customer behavior that the Court deemed "too speculative" in this case form the *very foundation* of Defendant's claims in *GMBEye*.

2. **The Court Imposed an Unreasonably High Pleading Standard that is Contradicted by Defendant's Own Conduct.**

The Court's demand for specific instances of lost customers at the pleading stage is not only an unduly high burden, particularly pre-discovery, but it is also a standard that Defendant itself does not meet in its *GMBEye* complaint. Defendant, like Plaintiff, relies on logical inferences about how fraudulent listings divert customers in the marketplace. Defendant provides a hypothetical to illustrate harm, but does not name any specific customers.

This pleading standard is inconsistent with the requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which require only that a complaint allege sufficient facts to state a claim to relief that is *plausible* on its face. Plaintiff's allegations, particularly when considered alongside Defendant's own admissions in *GMBEye*, meet this standard. The Court's demand for more at this stage is a clear error. This inconsistency creates an unlevel playing field, where Defendant is permitted to pursue claims based on a particular theory of harm, while individual plaintiffs are denied the opportunity to pursue *identical* claims based on the *same* theory. This is precisely the type of inequity that Rule 59(e) is designed to remedy.

3. **Defendant's Allegations in *GMBEye* Constitute Binding Judicial Admissions.**

Defendant's allegations in *GMBEye* are judicial admissions that are binding on the company. *See Reyn's Pasta Bella, LLC*, 442 F.3d at 746 n.6. These admissions directly contradict the Court's conclusion that the causal chain between fraudulent listings and economic harm is too speculative. Defendant cannot credibly argue that such a causal connection is implausible in this case while simultaneously alleging the *exact same mechanism of harm* in *GMBEye*. The Court must consider these admissions, and they fatally undermine the Court's finding of speculative harm.

**D. The Court Committed Clear Error by Denying Leave to Amend Based on an Erroneous Standing Analysis.**

The Court's denial of leave to amend was based on the erroneous premise that Plaintiff's injury is inherently derivative and that amendment would therefore be futile. (Order at 8). This conclusion is incorrect for two independent reasons:

1. **Plaintiff's Claim is Direct, Not Derivative, and Amendment is Therefore Not Futile.**

As previously established, Plaintiff's claim is based on a direct contractual right to payment for new customer acquisition, independent of DD's overall financial performance. His status as a creditor further reinforces the direct nature of his injury. The Court's application of a temporal test, focusing on the sequence of harm rather than the nature of the right, is inconsistent with Delaware law as articulated in *El Paso Pipeline* and *NAF Holdings*. Because Plaintiff's claim is direct, amendment is not inherently futile.

2. ***GMBEye* Demonstrates How Amendment Can Cure Causation Deficiencies.**

Defendant's own allegations in *GMBEye* provide a clear roadmap for Plaintiff to amend his complaint and establish a more plausible causal link between the fraudulent listings and his economic injury. The Court's assertion that Plaintiff cannot cure the deficiencies "without fundamentally changing [his] allegations" (Order at 8) is simply incorrect. Plaintiff can, and should be allowed to, *strengthen* his existing allegations by incorporating details that mirror those found in Defendant's *GMBEye* complaint.

Specifically, Plaintiff can amend his complaint to:

a. **Mirror Defendant's Causal Chain:** Add detailed allegations that mirror the causal chain articulated in *GMBEye*, demonstrating how fraudulent listings divert customers, resulting in lost revenue and a corresponding decrease in Plaintiff's compensation. (See Ex. A, *GMBEye* Compl. ¶¶ 49-51). This would include:

   i. Specific examples of how potential customers searching for services like those offered by DD are likely to encounter and be misled by fraudulent listings.

   ii. Allegations explaining how these encounters lead customers to contact and patronize competitors instead of DD.

   iii. Details on how this diversion directly reduces the number of new customers Plaintiff is able to acquire, thereby reducing his compensation under the Customer Acquisition Agreement.

b. **Incorporate Market Impact Evidence:** Include evidence, similar to that presented by Defendant in its complaint, showing the importance of Defendant

Business Profiles in the relevant market and how fraudulent listings distort competition. (See Ex. A, *GMBEye* Compl. ¶¶ 13-14). This could involve:

i. Data on the percentage of consumers who rely on online listings when choosing local service providers like DD.

ii. Expert declarations or industry reports on the impact of fraudulent listings on market dynamics and fair competition.

iii. Analysis of search trends and user behavior related to the services offered by DD, demonstrating the significance of online visibility in this particular market.

c. **Further Detail Direct Injury:** Provide greater detail regarding the direct financial harm suffered as a result of lost customer acquisitions, emphasizing the unique nature of his compensation structure and its independence from DD's overall financial performance. (See Ex. A, *GMBEye* Compl. ¶¶ 67-69). This could include:

i. Specific calculations of lost income based on the average revenue generated per new customer and the estimated number of customers diverted due to fraudulent listings.

ii. Documentation demonstrating the direct correlation between Plaintiff's compensation and the acquisition of new customers, further highlighting the independent nature of his injury.

These amendments, guided by Defendant's own pleading in *GMBEye*, would directly address the Court's concerns about the speculative nature of the causal link and demonstrate that Plaintiff's injury is not merely derivative of DD's. They would not fundamentally change the nature of Plaintiff's claim but would provide the factual support necessary to establish a plausible claim for relief.

**3. Denial of Leave to Amend Creates Substantial Prejudice**

The denial of leave to amend works particular hardship here given:

a. The early stage of litigation before any discovery

b. The presence of Defendant's GMBEye complaint providing a clear path for viable amendments

c. The significance of the conduct at issue affecting many contractors nationwide

d. The lack of alternative remedies if dismissal stands

Courts regularly find abuse of discretion in denying leave to amend in analogous circumstances. See Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (reversing denial of leave to amend where complaint could be cured); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (finding abuse of discretion in dismissal with prejudice at pleading stage).

**IV. CONCLUSION**

The Court's dismissal was based on a mischaracterization of Plaintiff's legal status, a misapplication of Delaware law on direct claims, and an internally inconsistent causation

analysis that contradicts Defendant's own judicial admissions in a nearly identical case. These errors are sufficiently clear and their impact on the outcome sufficiently significant to warrant reconsideration under Rule 59(e).

Furthermore, the denial of leave to amend was erroneous. Plaintiff's claim is based on a direct contractual right, and Defendant's *GMBEye* complaint provides a roadmap for amending the complaint to allege a plausible causal link between Defendant's actions and Plaintiff's economic harm.

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Vacate its January 7, 2025 Order dismissing this action;
2. Deny Defendant's Motion to Dismiss; or
3. In the alternative, grant Plaintiff leave to file a Fourth Amended Complaint that incorporates the factual allegations and legal theories presented by Defendant in *GMBEye* and clarifies any concerns of the court.

Dated: January 26, 2025

Respectfully Submitted,

By: /s/ Donald Friend

Donald Friend

donfriend214@gmail.com

Pro Se

407-624-5821